UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



PRECISION FRANCHISING LLC, )
                                                              )
       Plaintiff,                          )
                                                         )
       v.                              )   Case No. 1:11-cv-00137 (LMB/IDD)
                                                         )
K-SQUARED, INC., et al.,           )
                                                         )
       Defendants.               )
_____)

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Precision Franchising LLC's Motion for Default Judgment against K-Squared, Inc. ("K-Squared"), Kurtis Johnson ("Mr. Johnson"), and Kimberly Johnson ("Ms. Johnson") (hereinafter, K-Squared, Mr. Johnson and Ms. Johnson shall collectively be referred to as "Defendants"), pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b)(2). (Dkt. No. 14.) After a licensed attorney for the Defendants failed to appear at the May 20, 2011 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, and the supporting affidavits thereto, the undersigned Magistrate Judge recommends that Plaintiff's motion be GRANTED in part and DENIED in part.

### I.     INTRODUCTION

Precision Franchising LLC ("Plaintiff" or "Precision Franchising") filed a Complaint on February 8, 2011, seeking relief based on claims for breach of contract, conversion, trademark infringement, federal unfair competition, and common law service

mark infringement. (Dkt. No. 1.)[1] Plaintiff seeks default judgment against Defendants and requests that this Court award to Plaintiff damages in the amount of $625,162.49 for unpaid fees, past due loans, and conversion. (Compl. ¶ 2.) In addition, Plaintiff also seeks injunctive relief against the Defendants from this Court. (Compl. ¶ 2.)

### A. Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default admits the factual allegations in the complaint. Fed R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006) (holding that well-pleaded statements of fact in a complaint are deemed admitted when a defendant fails to answer or otherwise respond), *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a claim.") The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

This Court has subject matter jurisdiction over this case, by virtue of 28 U.S.C. § 1331, because this matter involves a federal question arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.* (Compl. ¶¶ 44-51.) Furthermore, the Court has subject matter jurisdiction over Plaintiff's claims arising under state law, pursuant to 28 U.S.C. §

---

[1] Plaintiff's Motion for Default Judgment does not address the unfair competition or common law service mark infringement claims. Thus, this Report and Recommendation will proceed only as to the remaining claims. (*See* Dkt. No. 15.)

1367, which provides the Court with supplemental jurisdiction over such claims. (Compl. ¶ 4.)

This Court must also be the proper venue for this action. Generally, a court is a proper venue when a claim is filed in the chosen court pursuant to 28 U.S.C. § 1391. However, federal common law provides that parties may contract to the appropriate venue for litigation arising under the contract, and that such forum selection clauses will be enforced by the courts. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643 (4th Cir. 2010) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972) ("There are compelling reasons why a freely negotiated . . . agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect")).

The Franchise Agreements at issue in this matter provide that the Defendants shall submit to the judicial district in which Plaintiff's principal place of business is located. (*See* Dkt. No. 15, Exhs. A, B, C, § 26.1.) The Agreement also provides that the parties' have negotiated the choice of law and forum selection provisions in good faith. (*Id.* § 26.3.) Plaintiff's principal place of business is located in Leesburg Virginia, which is within this district. (Compl. ¶ 1.) Accordingly, this Court has personal jurisdiction over the non-resident defendants and is also a proper venue for this action.

### B. Service of Process

Under FRCP 4(h), service upon a corporation, partnership or other unincorporated association shall be effectuated "in the manner prescribed for individuals by subdivision (e)(1) of that rule, or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or

3

by law to receive service of process . . . ." Fed. R. Civ. P. 4(h). Subdivision (e)(1) provides that service may be achieved "pursuant to the law of the state in which the district court is located, or where service is made . . . ." In addition, FRCP 4(e)(2)(A) states that service of process on an individual is proper where such service is carried out by personal delivery of the Summons and Complaint to that individual. *Id.* at 4(e)(2)(A). Thus, service is proper if it is executed according to Virginia or Nevada law.

In Virginia, service by posting summons and complaint on the door of the defendant's residence is permitted:

> (a) if the party to be served is not found at his usual place of abode, by delivering a copy of such process and giving information of its purport to any person found there, who is a member of his family, other than a temporary sojourner or guest, and who is of the age of 16 years or older; or
>
> (b) if such service cannot be effected under subdivision 2a, then by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode provided that not less than 10 days before judgment by default be entered, the party causing service or . . . his agent mails to the party served a copy of such process and thereafter files in the office of the clerk a certificate of such mailing . . .

Va. Code Ann. § 8.01-296(2).

On March 13, 2011, Plaintiff's private process server delivered a copy of the Summons and Complaint to Defendant Kurtis Johnson, also the registered agent for the Defendant corporation, in Las Vegas, Nevada. (Dkt. Nos. 3, 4.) On March 14, 2011, after three unsuccessful attempts to serve Ms. Johnson at her home and eleven attempts to serve her personally, the private process server posted a copy of the Summons and Complaint on Ms. Johnson's door and mailed a copy of the Summons and Complaint to Ms. Johnson to her Las Vegas address via first class mail. (Dkt. No. 7.) Therefore,

Plaintiff has properly served Defendants pursuant to FRCP 4(h) and Va. Code Ann. § 8.01-296(2)(b).

### C. Grounds for Entry of Default

Plaintiff filed the Complaint on February 8, 2011. (Dkt. No. 1.) On April 20, 2011, the Honorable Leonie M. Brinkema ordered Plaintiffs to seek and obtain default judgment as to all of the named defendants in the suit and referred the matter to the undersigned Magistrate Judge for further proceedings related to default judgment. (Dkt. No. 6.)

On April 29, 2011, Plaintiff filed a Request for Entry of Default against the Defendants (Dkt. No. 11), and on May 2, 2011, the Clerk entered default against the Defendants. (Dkt. No. 12.) On May 6, 2011, Plaintiff filed this Motion for Default Judgment (Dkt. No. 14) and on May 20, 2011, the Court convened a hearing on Plaintiff's motion. (Dkt. No. 20.) When no representative for the Defendant appeared at the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings,[2] the undersigned Magistrate Judge finds that the Plaintiff has established the following facts.

Precision Franchising is a Virginia limited liability company with its principal place of business in Leesburg, Virginia. (Compl. ¶ 1.) Precision Franchising is wholly owned by Precision Tune Auto Care, Inc. ("PTAC"), a Virginia corporation with a

---

[2] The pleadings include the Complaint (Dkt. No. 1), Plaintiff's Motion for Default Judgment (Dkt. No. 14), Plaintiff's Memorandum in Support of Default Judgment (Dkt. No. 15), and Plaintiff's supplemental affidavits (Robert Falconi Declaration, May 4, 2011 (Dkt. No. 15-1.) and Darryl Walter Declaration, June 29, 2011 (Dkt. No. 22.)).

principal place of business in Virginia. (*Id.*) Plaintiff is the licensor of the Precision Tune Auto Care system. (Compl. ¶ 7.) As such, it has licensed others to operate automotive service businesses under the Precision Tune Auto Care service marks and other marks and logos designated by Plaintiff as part of the Precision Tune Auto Care system (the "Proprietary Marks"). (*Id.*) Plaintiff has also allowed the licensees to utilize confidential methods and procedures developed by PTAC and by Precision Franchising for the operation of Precision Tune Auto Care service centers. (*Id* ¶ 8.) The Proprietary Marks are registered with the United States Patent and Trademark Office. (*Id.*)

Defendants Kurtis Johnson and Kimberly Johnson, husband and wife, are citizens of the State of Nevada. (Compl. ¶ 2, Falconi Decl. ¶ 3.) Their corporation, K-Squared, Inc., is a Nevada corporation with its principal place of business in Nevada. (Compl. ¶ 3, Falconi Decl. ¶ 3.) Defendants are parties to various Franchise Agreements (the "Franchise Agreements") with Plaintiff that provide for the operation of Precision Tune Auto Care Centers 39-07, 39-08, 39-09, and 39-10 ("Centers"), in Las Vegas, Nevada. (Compl. ¶ 13.)

Precision Franchising licensed the Defendants to operate automotive service businesses identified with the Precision Tune Auto Care service marks and to utilize confidential methods and procedures in exchange for Defendants' payment of operating and advertising fees. (Compl. ¶ 14, Exhibits A-C ¶ 4.2.) As a part of the Franchise Agreements, Defendants were required to pay Plaintiff an operating fee of 7.5% of the Centers' weekly gross sales. (Compl. ¶ 14, Exhibits A-C ¶ 4.2.) In addition, Defendants were to pay Plaintiff or its designee or spend, as directed by Plaintiff, an advertising fee of 9% of the Centers' weekly gross sales. (Compl. ¶ 15, Exhibits A-C ¶ 13.1.) The

Defendants failed to pay operating and advertising fees due under the Franchise Agreements in the amount of $58,936.07. (Compl. ¶ 20.)

Also, under Section 13.1 of the Franchise Agreements, Defendants were to expend in advertising that portion of the 9% advertising fee that it did not pay to Plaintiff. (Compl. ¶ 31.) The under-spending on advertising caused harm to Plaintiff in the amount of $82,284.00. (*Id.*)

The terms of the agreements for Centers 39-07, 39-08 and 39-09 were set to expire on September 1, 2016, March 8, 2017, and November 3, 2018, respectively. (Compl. ¶¶ 39-41; Falconi Decl. ¶ 4, Exhibits A-C.) However, prior to their expiration, the Franchise Agreements were terminated by Plaintiff on February 1, 2011 because of Defendants failure to pay fees due and owing under the Franchise Agreements. (Compl. ¶¶ 20, 38.)

Defendants also entered into a Promissory Note with Plaintiff in consideration for a loan. (Compl. ¶ 24.) Defendants owe Plaintiff a balance of $5,440.64 on the Promissory Note. (*Id.*) Furthermore, Plaintiff guaranteed an additional loan to Defendants per a separate Credit Facility Agreement dated November 3, 2008. (Compl. ¶ 27.) Defendants still owe $39,631.18 to Plaintiff under the Credit Facility Agreement. (*Id.*)

The Defendants continue to use the Plaintiff's Proprietary Marks, Trade Dress, and Trade Secrets in connection with automotive care services even though the Franchise Agreements have been terminated, and they are no longer licensed to use them. (Compl. ¶¶ 45, 46.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

As stated above, a defendant in default admits the facts in the complaint by virtue of its failure to deny them. Fed. R. Civ. P. 55. Nevertheless, in issuing this Report and Recommendation, the undersigned Magistrate Judge must analyze Plaintiff's claims in accordance with the standards under FRCP 12(b)(6) to ensure that the Complaint contains plausible claims upon which relief may be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss.)

Federal courts sitting in diversity must apply the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, this Court must apply the contract law of Virginia when evaluating Plaintiff's claims. Choice of law clauses are favored under Virginia law and the court will give them full effect except in unusual circumstances. *Tate v. Hain*, 181 Va. 402, 410 (1943). The Franchise Agreements provide that the contracts shall be governed by Virginia law. (Compl. ¶ 6.) Specifically, § 26.2 of the Franchise Agreements states that, "[w]ith respect to all claims, controversies, disputes, or actions related to this Agreement or the relationship created thereby, this Agreement . . . shall be governed, enforced, and interpreted under the laws of the Commonwealth of Virginia." (Dkt. No. 15, Exhs. A, B, C, § 26.2.) Therefore, this Court finds that the choice of law provisions included in the Franchise Agreements are enforceable, and this Court will apply Virginia law when analyzing Plaintiff's claims.

#### A. Breach of Contract Claims

Precision Franchising seeks to recover $620,386.05 in damages on five counts of breach of contract arising from unpaid operating and advertising fees, a Promissory Note,

a Credit Facility Agreement, under-spending on advertising, and Future Lost Profits under the Agreements.

Under Virginia law, a plaintiff properly pleads a breach of contract claim where he alleges that the defendant (1) had a legally enforceable obligation, (2) materially breached that obligation, and (3) such breach caused plaintiff damage. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). A plaintiff must prove these damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009).

Plaintiff has alleged facts that demonstrate that the parties entered into the following valid contracts: (1) Franchise Agreements; (2) Promissory Note; and (3) Credit Facility Agreement. Pursuant to the aforementioned Agreements, the Defendants had an obligation to pay operating and advertising fees to Plaintiff as well as the balances due under the Promissory Note and Credit Facility Agreement. Defendants failed to pay fees due under the Franchise Agreements as well as the balances due under the Promissory Note and Credit Facility Agreement. Accordingly, Plaintiff has pled sufficient facts to show that the Defendants breached their obligations under legally enforceable agreements.

Also, Plaintiff has pled sufficient facts to show that Defendants' breach has caused damage to Plaintiff. Plaintiff alleges that Defendants owe Precision Franchising the present value of Future Lost Profits for premature termination of the Franchise Agreements. (Compl. ¶ 42.) Under Virginia law, a plaintiff seeking an award of lost profit damages for breach of contract must allege that the damages he seeks are the direct result of the breach and that they "can be proved with reasonable certainty." *Manass-*

*Owens Co. v. Owens & Son,.* 129 Va. 183, 201-02, 105 S.E. 543, 549 (1921). By the express terms of the Franchise Agreements, the Plaintiff may recover Future Lost Profits.[3] The Franchise Agreements stipulate that Future Lost Profits are equal to the number of weeks remaining in Defendants' then-current term multiplied by the greater of (i) $300, or (ii) 7.5% of gross sales per week for each Center. Future Lost Profits are then reduced by twenty percent (20%) to determine their present value. (Compl. ¶ 42, Falconi Decl. ¶ 6.) For purposes of the calculation of Future Lost Profits, gross sales are determined by calculating the average gross sales per week from the latest twenty-six weeks of previously reported gross sales. (*Id.*). The fact that the parties' Franchise Agreements provide Plaintiff with such a remedy means that the parties considered such a remedy as appropriate in the event of Defendants' breach of the Franchise Agreements. Furthermore, based on the agreed method for calculating future lost profits, this Court finds that such damages have been proven with reasonable certainty. Consequently, this Court finds that Plaintiff has alleged sufficient facts to support its breach of contract claims in Counts I through IV and VI of the Complaint.

According to FRCP 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In the instant case, Plaintiff's calculations for Future Lost Profits vary.[4] When a complaint demands a specific amount of damages, courts have generally held that a court may not award additional damages

---

[3] Plaintiff in its Complaint also seeks an award of attorney's fees pursuant to the Franchise Agreements, however, Plaintiff has not requested such an award in its motion for default judgment. Plaintiff states that it will not seek such an award under the agreement if the Court grants Plaintiff's motion for default judgment. (Pl.'s Mem. Supp. Default J. 6n1.)

[4] In the Complaint, Plaintiff asserts Defendants owe Precision Franchising $378,443.30 under the Future Lost Profits formula. (Compl. ¶ 43.) However, Mr. Falconi's Declaration in Support of Plaintiff's Motion for Default Judgment purports Future Lost Profits to be $434,094.09. (Falconi Decl., ¶ 10.) Later, in its Supplemental Memorandum in Support of its Motion for Default Judgment, Plaintiff sought to amend its Future Lost Profits calculation to $410,033.25. (Walter Decl., ¶ 6.)

when rendering default judgment against the defendant. *Compton v. Alton Steamship Co.*, 608 F.2d 96, 104 (4th Cir. 1979). Accordingly, this Court may only consider damages for Future Lost Profits in the amount of $378,443.30, as set forth in the Complaint. The Court, therefore, should grant Plaintiff's motion for default judgment against Defendants as to Count VI of the Complaint, but limit its award to $378,443.30.

### B. Conversion Claim

Plaintiff claims that the Defendants have intercepted checks intended for Plaintiff in the amount of $4,776.44, and have wrongfully cashed and misappropriated those funds. (Compl. ¶ 35.) Plaintiff has demanded repayment of the funds, and Defendants have refused. (*Id.*)

Under Virginia law, conversion is "any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956). Thus, a plaintiff asserting a conversion claim must allege (i) the ownership or right to possession of the property and (ii) the defendant's wrongful exercise of dominion or control over the plaintiff's property, depriving plaintiff of possession. *Id.*

In this case, Precision Franchising has alleged that Defendants have wrongfully intercepted checks, totaling approximately $4,776.44, intended for Plaintiff. (Compl. ¶ 35.) The plaintiff states that the Defendants converted said checks and have wrongfully cashed and misappropriated those funds for their own use. (Compl. ¶ 36.) Accordingly, Defendants' intercepting of checks belonging to Plaintiff and their use thereof constitutes conversion. Therefore, this Court should grant default judgment against Defendants as to Count V of the Complaint.

### C. *Trademark Infringement Claim*

Plaintiff seeks injunctive relief for Defendants' violation of § 1114 of the Lanham Act (the "Act"). (Compl. ¶¶ 45-48.) The Act provides that a person will be liable in civil action, if without consent of the registrant, the person uses in commerce a reproduction or colorable imitation of a registered mark "in connection with the sale [or] offering of sale . . . or advertising of . . . services on or in connection with which . . ." such that the use is likely to cause confusion or mistake. 15 U.S.C. § 1114(1)(a).

A plaintiff successfully brings claims for trademark infringement under § 1114(1)(a) of the Act, where the plaintiff demonstrates that (1) it possesses the mark; (2) the defendant used the mark in commerce; (3) such use was "in connection with the sale, offering for sale, distribution or advertising of goods and services; and (4) that defendant's use is likely to confuse consumers. *Lamparello v. Falwell*, 420 F.3d 309, 312-13 (4th Cir. 2005).

The Defendants' continued unauthorized use of the Plaintiff's Proprietary Marks, Trade Dress, and Trade Secrets constitutes trademark infringement under §§ 1114(1)(a) and 1125(a) of the Act. Plaintiff has spent "time, skill, effort, and money to develop unique and specialized training . . . operational procedures, advertising, and marketing programs . . . for the establishment and operation of an automotive service business." (Franchise Agreement, Recitals ¶ A.) Plaintiff established rights in the Marks in 1982, and most recently, obtained registrations pertaining to the Marks in 2007 and 2008. (Compl. ¶ 9.) Thus, Plaintiff validly possesses the Marks.

As previously stated, the Defendants continue to use the Proprietary Marks, Trade Dress, and Trade Secrets even though the Franchise Agreements have been terminated,

and they are no longer licensed to use them. (Compl. ¶¶ 45, 46.) Furthermore, the Defendants are using the Proprietary Marks to operate in the automotive service business and are therefore using them "in commerce" within the meaning of §§ 1114(1)(a) of the Act. (Compl. ¶19.)

Moreover, the use of the Proprietary Marks is likely to confuse Plaintiff's customers. (Compl. ¶ 53.) To determine whether confusion is likely, a court will consider the strength or distinctiveness of the mark, the similarity of the two marks, the similarity between the goods/services that the marks identify, the defendant's intent, and among other things, the similarity of the advertising used by the parties. *Lamparello,* 420 F.3d at 315 (citing *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984). Once a plaintiff has shown that confusion is likely, the court will grant relief. *Id.* at 314 (stating that a defendant would only be liable for infringement on plaintiff's trademark under the Act where defendant's use of the mark is likely to cause confusion).

Plaintiff has engaged in extensive use of its Proprietary Marks and Trade Dress for over thirty years, and as a result of its sales, advertising, and promotion, Plaintiff has become widely recognized as a provider of quality automotive products and services. (Compl. ¶ 11.) Customers are likely to believe that Defendants are a continued Franchisee operating in Plaintiff's franchise network. The Proprietary Marks are likely to cause confusion because they are Plaintiff's marks. Accordingly, this Court finds that the Defendants' use of the Proprietary Marks constitutes trademark infringement within the meaning of § 1114(1)(a) of the Act, and default judgment should be entered against the Defendants on Count VII of the Complaint.

Plaintiff also seeks injunctive relief from this Court to prevent Defendants from continuing to operate any business as a "Precision Franchising Center." Pursuant to § 1116 of the Lanham Act, a court may grant injunctions "according to the principles of equity . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ." 15 U.S.C. § 1116(a). Therefore, to determine whether injunctive relief is appropriate in this case, the Court must balance the following four factors: (1) the likelihood of success on the merits of the plaintiff's claim (for a preliminary injunction), or the existence of actual success on the merits (for a permanent injunction); (2) the likelihood of irreparable injury to the Plaintiff in the absence of an injunction; (3) the likelihood of harm to other interested persons if an injunction is issued; and (4) the public interest in granting versus not granting the injunction. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)(stating the factors that the court must consider when making a determination about whether injunctive relief should be awarded).

Having accepted the well pled allegations of the Complaint as true, Plaintiff has demonstrated a likelihood of success on the merits because in default judgment this Court accepts all facts in the Complaint as true. As has been discussed, Defendants' use of Proprietary Marks is likely to cause confusion to customers. Plaintiff has alleged and Defendants, by failing to answer, have admitted that Defendants' use of Plaintiff's Proprietary Mark is likely to cause irreparable harm to Plaintiff. The issuance of an injunction would pose no harm to any other persons and it is in the public's interest to stop Defendant from making false representations to the public that it is presently affiliated with Plaintiff's franchise network. This Court finds that injunctive relief is

appropriate and should be awarded pursuant to § 1116 of the Lanham Act. Accordingly, Defendants should be enjoined from operating any automotive care services business as a Precision Franchising Center.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that the Plaintiff's Motion for Default Judgment be granted in part and denied in part. The motion should be granted as to an entry of default judgment against the Defendants K-Squared, Inc., Kurtis Johnson, and Kimberly Johnson in favor of Precision Franchising on Counts I through VII of the Complaint. The Plaintiff's motion should be denied as to its request for Future Lost Damages in the amount of $410,033.25. In that regard, the undersigned Magistrate Judge recommends that an Order be entered awarding Plaintiff damages for Future Lost Profits in the amount of $378,443.30 and total damages in the amount of $569,511.63 reflecting Future Lost Profits as well as damages for unpaid fees, past due loans and conversion. The undersigned further recommends that this Court enjoin Defendants from operating any business purporting to be a Precision Franchising Center.

## V. NOTICE

By mailing copies of this report and recommendation, the parties are notified as follows. Objections to this report and recommendation must, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record and Defendants at the following addresses:

K-Squared, Inc.
4294 South Ft. Apache Road
Las Vegas, NV 89147

Kurtis Johnson
4294 South Ft. Apache Road
Las Vegas, NV 89147

Kimberly Johnson
924 White Feather Lane
Las Vegas, NV 89138

_/s/_
Ivan D. Davis
United States Magistrate Judge

August 29, 2011
Alexandria, Virginia